UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VALLCO PROPERTY OWNER, LLC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ARBITRATION ASSOCIATION, INC., <br><br> Defendant. | Case No.  5:23-cv-05843-EJD <br><br> **ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> Re: ECF No. 3 |

Plaintiff Vallco Property Owner, LLC ("Vallco") initiated this action for injunctive relief against the American Arbitration Association ("AAA") to enjoin the AAA proceedings in New York and preclude the AAA from setting venue in any jurisdiction other than California. *See generally* ECF No. 1 ("Compl."). The arbitration concerns a since-terminated agreement between Vallco and Rafael Vinoly Architects ("RVA") pursuant to the AAA Construction Industry Arbitration Rules. RVA brought a claim for fees against Vallco in New York, but Vallco contends that the AAA proceedings should be venued in California pursuant to the parties' agreement and the AAA Construction Industry Arbitration Rules.

Vallco filed the instant ex parte application for a temporary restraining order requesting that the Court issue a temporary restraining order and/or a preliminary injunction against the AAA seeking the same relief. For the reasons discussed herein, the Court DENIES the request.

**I.   BACKGROUND**

Vallco is a Delaware limited liability company specializing in real estate investment that has its principal place of business in Palo Alto, California. Compl. ¶¶ 1, 6. RVA is a New York-based architecture firm. *Id.* ¶ 6. On May 4, 2015, Vallco and RVA entered into a design contract

Case No.:  5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
1

1   (the "Agreement") for the Vallco Mall Redevelopment Project (the "Project") at 10123 N Wolfe
2   Road, in Cupertino, California. *Id.* ¶ 7. The multi-billion-dollar project was intended to
3   reconstruct and redevelop the Vallco two-story shopping mall on a 50-acre parcel into a 7,000,000
4   square-feet mixed-use development structure that includes residential construction, retail and
5   office space, as well as parkland, trails, and bike paths. *Id.*

6   The parties' Agreement is based on AIA Form document B101-2007 "Standard Form
7   Agreement Between Owner and Architect." *Id.* ¶ 12. It was executed in California and concerns
8   the design and development of property in California. *Id.* ¶ 13. Section 8.3.1 of the Agreement
9   provides that any disputes arising out of the Agreement were to be resolved by the AAA under the
10  Construction Industry Arbitration Rules:

> Any claim, dispute or other matter in question arising out of or related to this Agreement subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, **shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of this Agreement**.

*Id.* ¶ 14; ECF No. 3-2 ("McLennon Decl."), Ex. 2 (emphasis added). Section 10.1 states that the
Agreement "shall be governed by the law of the place where the Project is located, without giving
effect to its conflict of law provisions." *Id.* ¶ 16. The Agreement does not fix a locale for
arbitration, but Construction Industry Arbitration Rule 12 provides that arbitration agreements that
are "silent" as to locale designation "shall be the city nearest to the site of the project in dispute."
*Id.* ¶ 15.

During the performance of the Agreement, RVA allegedly delayed the Project and
exceeded the budget in violation of the Agreement. *Id.* ¶¶ 6, 11. RVA was terminated after 7
years, in April 2023. *Id.* ¶ 9. On April 26, 2023, RVA filed a demand for arbitration with AAA's
New York office seeking over $9 million in alleged unpaid project fees from Vallco and asserting
claims on behalf of "numerous California subconsultants who worked for RVA on the Project in
California." *Id.* ¶¶ 17–19. Specifically, 16 of the 26 project subconsultants identified by Vallco
has being relevant witnesses to both parties' claims, counterclaims, and defenses are located in
California. ECF No. 3 ("Mot.") at 12–13. Vallco subsequently counterclaimed for damages.

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
2

Compl. ¶ 19.

Vallco answered the demand for arbitration and moved to transfer the venue to California based on the AAA rules and the fact that the majority of the witnesses are located in California. *Id.* ¶ 20. On June 12, 2023, the AAA appointed a panel of three arbitrators (the "Panel"). *Id.* ¶ 21. Vallco timely objected to the appointments because none of the arbitrators are licensed to practice law in California. *Id.* ¶ 22. On June 28, the AAA Administrative Review Council (the "Council") ruled that New York would remain the locale of the case, subject to the Arbitrator's authority to make a final determination on the issue. *Id.* ¶ 23.

During the preliminary hearing in July, Vallco again raised change of venue. *Id.* ¶ 26. The Panel ordered additional briefing on the matter and, on August 4, issued a decision confirming the locale of the hearing as New York. *Id.* ¶¶ 26, 28. The Panel's decision did not provide a basis or explanation for its decision to maintain the New York locale. *Id.* ¶ 29; *see* McLennon Decl., Ex. 11. The arbitration is in the preliminary stages of discovery, and the Panel has issued no substantive rulings. *Id.* ¶ 30.

On November 11, 2023, Vallco moved for a temporary restraining order. *See generally* Mot. Summons was issued as to the AAA the following day. *See* ECF No. 5.

## II. LEGAL STANDARD

A temporary restraining order is a provisional remedy intended to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit also recognizes the "sliding scale" test, which provides that "[a]

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
3

1  preliminary injunction [or TRO] is appropriate when a plaintiff demonstrates . . . that serious
2  questions going to the merits were raised and the balance of hardships tips sharply in the
3  plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)
4  (quotations and citation omitted).  Under this test a plaintiff must still satisfy the other *Winter*
5  factors.  *Id.*

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

"Likelihood of success on the merits 'is the most important' *Winter* factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors, in the absence of 'serious questions going to the merits.'"  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)). "[O]nce the moving party has carried its burden of showing a likelihood of success on the merits," the non-moving party bears the burden of showing a "likelihood that its affirmative defense will succeed." *Id.*  Vallco must show that they are likely to succeed in seeking vacatur or modification of the Panel's venue decision in the AAA proceeding.

Vallco contends that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, authorizes a federal court to enjoin the ongoing arbitration.  Mot. at 8.  The FAA applies to arbitration agreements "evidencing a transaction involving commerce" and provides the presumptive rules for arbitration.  9 U.S.C. § 2; *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002), *opinion amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002).[1]  Sections 10 and 11 of the FAA provide the grounds for vacatur and modification of an arbitration award.  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  Section 10(a) provides that a district court "in

---

[1] Parties may arbitrate under state laws where the "parties clearly evidence their intent to be bound by such rules." *Sovak*, 280 F.3d at 1269.  There is no evidence here that the parties intended to incorporate the California Arbitration Act, so the Court will focus only on the FAA.  *See Space Data Corp. v. Hosie Rice LLP*, No. 20-CV-08256-JSW, 2021 WL 2328391, at *3 (N.D. Cal. May 5, 2021), *aff'd*, No. 21-15977, 2022 WL 1515342 (9th Cir. May 13, 2022) ("[T]here is no evidence in the record that the parties agreed that California law should govern this action over the FAA.").

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
4

and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration" in four enumerated circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Ninth Circuit has summarized these circumstances as permitting vacatur where: arbitrators "exceed their powers," the award is "completely irrational," or it exhibits a "manifest disregard of the law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (internal citations omitted). The party seeking to vacate an arbitration award bears the burden of establishing grounds for vacating the award. *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

Vallco asserts that the Panels' venue decision violates §§ 10(a)(3) and (a)(4) of the FAA because the Panel had "no authority" to set the locale in New York. Mot. at 9–12. However, 9 U.S.C. § 10 applies to final arbitration awards, not interlocutory rulings. The Court must therefore determine the threshold issue of whether the Panel's denial of Vallco's motion to deny change of venue may be vacated or modified under the FAA.

Since the FAA is interpreted to preclude a federal court from "interven[ing] *before* a final award is made," a district court's authority "is limited to decisions that bookend the arbitration itself," or after a final arbitration award is issued.[2] *In re Sussex*, 781 F.3d 1065, 1071–72 (9th Cir. 2015) (emphasis added); *see Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012

---

[2] "Before arbitration begins, the district court has the authority to determine whether there is a valid arbitration agreement between the parties, and if so, whether the current dispute is within its scope." *In re Sussex*, 781 F.3d at 1071.

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
5

(9th Cir. 2004) ("The [FAA] gives federal courts only limited authority to review arbitration decisions, because broad judicial review would diminish the benefits of arbitration."). Thus, most circuits have held that federal courts are generally not permitted to intervene in an ongoing arbitration except in "narrow circumstances such as naming a replacement arbitrator or compelling witnesses to testify at an arbitration hearing . . . . The [FAA] does not suggest that a court could otherwise intervene before a final ward is made." *Id.* at 1071–72; *see Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1022 (9th Cir. 1991) (collecting cases).[3]

Vallco concedes that the Panel's venue decision is an interlocutory ruling but argues that the decision is judicially reviewable pursuant to *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248 (9th Cir. 1973). In *Aerojet-General*, the court addressed an identical situation where the petitioner requested judicial intervention to vacate the venue decision. *Id.* The Ninth Circuit recognized that "a ruling fixing the place for hearing may cause irreparable harm to one or more of the parties" and thus, a decision on locale change could conceivably constitute one of the "extreme cases" where "judicial review prior to the rendition of a final arbitration award should be indulged." *Id.* at 251; *see Pac. Reinsurance,* 935 F.2d at 1022. One such example is when "the choice of locale for arbitration is not made in good faith and severe irreparable injury is inflicted on one or more of the parties. In such case the courts should be free to prevent a manifest injustice." *Aerojet-Gen.*, 478 F.2d at 251. The Ninth Circuit noted in *In Re Sussex*, that "extreme cases" essentially means "equitable concerns sufficient to justify mid-arbitration intervention." 781 F.3d at 1073.

Here, Vallco has alleged that the Panel lacked the authority to permit venue in New York because the decision disregards the language of the parties' Agreement and the AAA Construction Industry Arbitration Rules, and New York bears no relationship to the dispute. *See* Mot. at 9–12. The Agreement does not provide a locale, and Rule 12(a) provides that:

---

[3] As aptly summarized by the Seventh Circuit, "[r]eview comes at the beginning or the end, but not in the middle" of an arbitration proceeding. *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.,* 671 F.3d 635, 638 (7th Cir. 2011).

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
6

> When the parties' arbitration agreement is silent with respect to locale and the parties are unable to agree upon a locale, **the locale shall be the city nearest to the site of the project in dispute**, as determined by the AAA, **subject to the power of the arbitrator** to finally determine the locale within 14 calendar days after the date of the preliminary hearing.

AAA Construction Industry Arbitration Rules and Mediation Procedures (July 1, 2015), Rule 12(a) (emphasis added). Vallco interprets the second clause, which provides that the decision is "subject to the power of the arbitrator," as constrained by the preceding clause stating that the locale "shall be the city nearest to the site of the project in dispute." Mot. at 11. Thus, under Vallco's interpretation of Rule 12(a), an arbitrator's authority to choose the locale is limited to deciding which locale is "nearest' to the site of the project. *Id.* at 12. Such an interpretation would not permit the Panel to select New York as the locale when the project site is approximately 3,000 miles away in California; the Panel's power would be limited to deciding which city is closest to the Project site in Cupertino.

The Court is not persuaded that it can vacate and/or modify the Panel's venue decision under these circumstances. First, the fact that Vallco disputes the Panel's interpretation and application of Rule 12 in reaching its venue decision does not rise to the level of an extreme case that warrants intervention by this Court. *See Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.,* 389 F. Supp. 3d 687, 698 (N.D. Cal. 2019) (finding that defendant's disagreement with the arbitrator's interpretation of express contract terms is not a grounds on which to vacate an award); *see also Thule AB v. Advanced Accessory Holding Corp.*, No. 09-CV-00091 (PKC), 2009 WL 928307, at *3 (S.D.N.Y. Apr. 2, 2009) (finding that where a party disagreed with the arbitrator's calculation methods, "[w]hether the [arbitrator]'s calculation . . . was correct is beyond the reach of Section 10(a)(4)" because the arbitrator "clearly had the power to *reach* the issue of the calculation"). At its core, this case presents an issue of interpretation, and a district court has "no authority to vacate an award solely because of an alleged error in contract interpretation." *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co.*, 933 F.2d 1481, 1485 (9th Cir. 1991). Likewise, a court lacks the authority to vacate a Panel's reasonable interpretation of an AAA rule mid-arbitration while it is acting within the scope of its

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
7

authority. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1271 (9th Cir. 2002) ("If on its face, the [arbitration] award presents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced.").

Second, Vallco's arguments regarding inconvenience and financial harm are insufficient reasons to judicially intervention in an ongoing arbitration. *In re Sussex*, 781 F.3d at 1075. Vallco's motion to change venue frequently cites convenience and cost as favoring transfer of venue to California, for example:

- "All Vallco employees and officers and the majority of anticipated third-party witnesses reside in California . . . . it is unknown whether RVA personnel are based in New York or located throughout the country y (or potentially globally) such that attending a hearing or deposition in California would seem equally or more convenient," McLennon Decl. Ex. 4 at 3;
- "It would be costly to both parties to require California arbitrators to travel to New York," *id.*;
- "California-located arbitrators could easily drive by and familiarize themselves with the Property," *id.* at 4; and
- "[N]ot only would a New York venue be inconvenient for [the] parties but it also would be inconvenient for the Arbitrators," *id.*

The Ninth Circuit has expressly rejected these arguments, stating that, "even assuming that a mid-arbitration intervention could be permissible under some extreme circumstances, cost and delay alone do not constitute the sort of severe irreparable injury or manifest injustice that could justify such a step." *In re Sussex*, 781 F.3d at 1075.[4]  This is true "regardless of the size and early stage of the arbitration." *Id.*

Although the Ninth Circuit has not provided clear direction regarding what exactly constitutes an "extreme circumstance," in *Orion Pictures* the court suggests that a situation "where deferring judicial review after an award risks destroying the party's ability to enforce a judgment" would warrant mid-arbitration intervention. *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 n.2 (9th Cir. 1991). In a footnote, the court provides an example of where

---

[4] The *In re Sussex* court cautioned that "no district court in our circuit had previously interpreted *Aerojet–General* to allow mid-arbitration intervention, and the potential impact of this ruling raises substantial concerns." 781 F.3d 1065, 1076 (9th Cir. 2015).

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
8

1   non-final review from the court would be required: an arbitrator's ruling setting up an escrow
2   account to preserve assets during arbitration because, if the ruling was not enforced, the assets
3   could be squandered and a final monetary award would be meaningless. *Id.* The case before the
4   Court here does not present a similar situation where the alleged harm could not be adequately
5   addressed after issuance of an award.

6   Even if the venue decision did warrant judicial intervention mid-arbitration, nothing in the
7   record before the Court indicates that the Panel exceeded their powers, made an irrational
8   decision, or manifestly disregarded of the law. *Kyocera*, 341 F.3d at 997. The evidence shows
9   that the AAA followed its procedure and heard from both parties on the issue; the Council
10  reviewed Vallco's motion and considered the AAA's factors in making its locale determination.[5]
11  Based on the AAA's authority to determine the locale for the preliminary hearing, the Council
12  determined that New York would be the locale for the case, subject to the Panel's final decision.
13  *See* McLennon Decl., Ex. 7. After appointment of the Panel, a preliminary hearing was timely
14  held where Vallco again objected to the Council's locale determination. *Id.*, Exs. 8, 9. The Panel
15  considered the parties' submissions and decided that New York City shall be the locale of the
16  evidentiary hearings pursuant to its authority under Rule 12. *Id.*, Exs. 10, 11.

17  In sum, Vallco has not shown a likelihood of success on the merits.

### B.   Irreparable Harm

19  To the extent that Vallco argues it will be irreparably prejudiced because the AAA lacks
20  the power to subpoena non-party out-of-state witnesses and most of the "essential witnesses" are
21  located in California, the Court is not persuaded that this warrants judicial intervention mid-
22  arbitration at this time. Mot. at 12–14. However, the Court acknowledges that Vallco's argument

---

[5] The AAA assigns to its Administrative Rules Committee ("ARC") determination of the locale of the evidentiary hearing when parties disagree as to the locale. *See* McLennon Decl., Ex. 4. ARC considers the following factors in making a locale determination: the location of the parties, location of the witnesses and documents, location of the site; consideration of relative cost to the parties, place of performance of the contract, laws applicable to the contract, place of previous court actions; necessity of an on-site inspection of the project, and other arguments that may affect the locale determination. *Id.* at 2–3.

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
9

is not unfounded.

Pursuant to § 7 of the FAA, arbitrators may summon the physical attendance of a non-party as a witness and arbitrators may direct such person to "to bring with him or them" relevant documents or material. 9 U.S.C. § 7. If the person(s) summoned refuse to comply, "the statute gives the district court in the district in which the arbitrator sits the power to compel the person's attendance before the arbitrator." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) (citing 9 U.S.C. § 7). Thus, should a situation arise where a witness refuses to testify, Vallco may seek judicial intervention. *See In re Sussex*, 781 F.3d at 1071 (a district court may compel a witness to testify at an arbitration hearing).

The problem lies with the fact that the Panel ruled that the venue is in New York despite the fact that the majority of non-party "essential witnesses" reside in California, where the Project site is located and where the agreement was executed. The FAA does not authorize nationwide service of process. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 96 (2d Cir. 2006). Section 7 of the FAA requires that subpoenas are enforced in the district in which the arbitrators sit. 9 U.S.C. § 7; *id.* (stating that "the ordinary rules applicable to district courts apply" to the manners in which subpoenas to appear and orders to compel are served and enforced in arbitration). Here, since the Panel is sitting in the Southern District of New York, § 7 requires that any enforcement action be brought in that district. *See Dynegy*, 451 F.3d at 96.

Federal Rule of Civil Procedure 45(c) defines the "place of compliance" for subpoenas and the geographical scope of a federal court's power to compel a witness to testify at a trial or other proceeding. Rule 45(c)(1)(A) imposes a 100-mile limitation, meaning "a person cannot be required to attend a trial or hearing that is located more than 100 miles from their residence, place of employment, or where they regularly conduct in-person business." *In re Kirkland*, 75 F.4th 1030, 1042 (9th Cir. 2023). Therefore, any court in the Southern District of New York cannot compel California witnesses to testify in the AAA arbitration in New York.[6]

---

[6] The same is true for remote testimony. The Panel's locale decision provides that it will "permit witnesses to travel virtually without having to travel to New York City," which—although not

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
10

Some courts have permitted workarounds to enforcement of arbitration subpoenas and compelling testimony in out of state arbitrations. For example, a district court in the Northern District of Illinois enforced an arbitration subpoena against an out of state non-party by permitting petitioner's attorney to issue a subpoena under Rule 45(a)(3)(B) that would be enforced by the district court in district where the non-party resided in the Eastern District of Pennsylvania. *Amgen Inc. v. Kidney Ctr. of Del. Cnty., Ltd.*, 879 F. Supp. 878 (N.D. Ill. 1995). After determining that the arbitrator's subpoena was valid and enforceable, the court granted the motion to compel and ordered the case to "remain pending until [respondent] complied with the subpoena." *Id.* at 883.

The Second Circuit declined to adopt *Amgen*'s "compromise position" to compel a non-party out of state witness to testify, explaining that the arbitrators, and not the parties to an arbitration, may employ § 7 to subpoena documents or witnesses. *Dynegy*, 451 F.3d at 96. The Second Circuit noted that the parties to the arbitration "chose to arbitrate in New York even though the underlying contract and all of the activities giving rise to the arbitration had nothing to do with New York; they could have easily have chosen to arbitrate in Texas, where [petitioner] would have been subject to an arbitration subpoena and a Texas court's enforcement of it." *Id.* The court reversed the district court's decision ordering compliance with the arbitrator's subpoena, concluding that because the "parties made one choice for their own convenience, the parties should not be permitted to stretch the law beyond the text of Section 7 and Rule 45 to inconvenience witnesses." Here, however, Vallco seeks the opposite: to vacate or modify the Panel's decision selecting New York as the venue to avoid this very outcome.

It appears the only way Vallco (or RVA) could enforce a subpoena and compel an out-of-state witness's attendance is demonstrated in a case before the District Court for the Southern District of Florida. In *Shirvanian*, the arbitration panel for an arbitration based in California

---

required—increases convenience and reduces costs. McLennon Decl., Ex. 11. The Ninth Circuit recently held that Rule 45(c)'s geographical limitations to testimony applies with equal force to testimony provided via remote video transmission. *In re Kirkland*, 75 F.4th at 1051.

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
11

issued a subpoena to compel an out of state non-party's witness testimony.[7] *Shirvanian v. Byers*, No. 16-V-21261, 2016 WL 11754322, at *1 (S.D. Fla. Sept. 22, 2016). The subpoena required the Florida-based witness to appear and testify at an AAA office in Miami, less than 50 miles from his Florida home. *Id.* The arbitrators committed to "convene in Florida in the near future" to receive the witness testimony. *Id.* at 2. The court denied a motion to quash and enforced the subpoena, finding that the arbitrator's may be deemed as "sitting" in Florida under § 7 for the purposes of receiving the witness's testimony. *Id.* at 3–4.

The implication of *Shirvanian* and the aforementioned cases is that the Panel's venue selection in New York—more than 3,000 miles from the Project site and where the majority of the "essential witnesses" reside—creates a potential difficulty where the Panel would have to subpoena the out-of-state witnesses with the intention of traveling to California to hear the witness testimony in order for a court in this district to compel arbitration testimony and comply with Rule 7 and Rule 45. Although the Panel's selection of New York as the locale leaves Vallco (and RVA) without a "simple" avenue to enforce arbitration subpoenas and compel non-party out of state witness testimony, it does not leave them entirely without a remedy to do so, and it is speculative to say at this time that the Panel would not travel to California to hear non-party witness testimony compelled by the court if need be.

In sum, the facts and considerations currently before this Court do not appear to present an extreme case where "a ruling fixing the place for hearing may case irreparable harm to one or more of the parties." *Aerojet-Gen.*, 478 F.2d at 25. The harms asserted by Vallco can properly be addressed after the issuance of an award.

## IV.   CONCLUSION

For the foregoing reasons, Vallco has failed to demonstrate a likelihood of success on the merits or irreparable harm. Accordingly, Vallco's ex parte application for a temporary restraining order is DENIED.

---

[7] The witness resided in California at the beginning of the arbitration but had since relocated to Florida.

Case No.: 5:23-cv-05843-EJD
ORDER DEN. EX PARTE APPLICATION FOR TRO
12

**IT IS SO ORDERED.**

Dated: November 28, 2023

_____
EDWARD J. DAVILA
United States District Judge